Filed 3/25/16  Marriage of Stupp and Schilders CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of STEVEN STUPP and ANNEMARIE SCHILDERS.<br><br>STEVEN STUPP,<br>　　　　Respondent,<br>v.<br>ANNEMARIE SCHILDERS,<br>　　　　Appellant. | A142302<br><br>(San Mateo County<br>Super. Ct. No. FAM 0110799) |

Steven Stupp (Stupp) filed to dissolve his marriage to Annemarie Schilders (Schilders) in 2010, shortly after their child was born.  In November 2013, after three years of contested proceedings before two different temporary judges, Stupp and Schilders reached a settlement:  during two days of meetings with their lawyers and the second temporary judge, they agreed on the division of their property and the terms of spousal and child support, and they agreed to withdraw their pending motions related to custody issues.

A few months later, a stipulated judgment was entered based on their agreement before the judge; then, Schilders had second thoughts.  Days after the judgment was entered she hired a new lawyer, withdrew her stipulation to use a temporary judge, and asked the court to vacate the judgment.  Her first motion to vacate, filed under Code of

Civil Procedure section 663,[1] was never heard, and was therefore denied by operation of law. Her second motion to vacate, filed under section 473, was heard and denied. However, in response to Schilders's arguments that the judgment did not accurately reflect the terms of the parties' agreement, the family court ordered the judgment be modified.

Schilders then appealed, arguing that the family court erred in entering the judgment, in denying her motions to vacate the judgment, and in modifying the judgment. We find no error, and therefore we affirm the judgment of the family court as it was modified by the family court.

## FACTUAL AND PROCEDURAL BACKGROUND

When Stupp filed for dissolution of marriage in September 2010, he and Schilders had been married for about 15 years and had a two-month old child.[2] Stupp's income was about $400,000 per year, and Schilders had been unemployed for about seven years.

Stupp and Schilders stipulated to the appointment of Richard C. Berra as temporary judge. In July 2012, Judge Berra signed findings and an order after hearing adopting temporary custody orders (2012 custody order), giving Stupp and Schilders joint legal and physical custody, stating that the child's primary physical residence would continue to be with Stupp, and establishing a schedule to move toward "more equal joint [physical] custody in the future." The 2012 custody order also urged Stupp and Schilders to agree to appoint a parenting coordinator, who would make recommendations to the court on issues that Stupp and Schilders could not resolve. Two weeks after he signed the order, Judge Berra recused himself for reasons not stated in the record.

In April 2013, Stupp and Schilders stipulated to the appointment of a new temporary judge, Clifford Chernick.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] The proceedings in the family court have been highly contested. This is the first of nine appeals in this matter, all filed by Schilders. We filed a second opinion in this case on the same day we issued this opinion. (See *Stupp v. Schilders* (A143186, March 25, 2016) [nonpub. opn.].)

2

A.     *Stupp and Schilders Agree on Settlement Terms in November 2013*

A trial on all issues was scheduled for November 20, 2013, but did not take place because on November 19 and 20 Stupp and Schilders settled their disputes, as reflected in a transcript of proceedings and in signed documents.

The first document, entitled "Term Sheet" (Property Term Sheet), was signed on November 19, 2013, by Stupp, Schilders, their attorneys, and Judge Chernick.  It primarily concerns the division of certain property, including retirement accounts; the payment of professional fees; the parties' withdrawal of pending motions regarding custody issues; and the selection of a preschool for their child.  The Property Term Sheet states:  "[Stupp and Schilders] have reached this agreement to resolve certain all [sic] issues in their dissolution of marriage action . . . except for those reserved issues stated in . . . this agreement."  The issues reserved for trial included all issues related to child support and spousal support from and after November 18, 2013, and the court retained jurisdiction over issues related to child custody.

The second document, entitled "Support Term Sheet" (Support Term Sheet), was signed on November 20, 2013, by Stupp, Schilders, their attorneys, and Judge Chernick.  The Support Term Sheet "resolve[s] the issues of child support and spousal [sic]," and incorporates the provisions of the Property Term Sheet "except to the extent modified by" the Support Term Sheet.  Stupp and Schilders agreed as follows:  Spousal support to Schilders of $8,000 per month (subject to true-up), with Stupp to pay $7,000 each month, and the remaining $1,000 paid semi-annually.  Child support to Schilders of $1,500 per month (subject to true-up), to be offset by a flat reimbursement of $1,500 per month by Schilders for certain expenses for the child (including pre-school, agreed-upon extracurricular activities, health care, and Stupp's child care expenses).  Spousal support and child support are subject to annual true-up based on the parties' income tax returns, using DissoMaster, a computer program that has been certified by Judicial Council for child support calculations pursuant to Family Code section 3830 and rule 5.275 of the California Rules of Court.  (http://www.courts.ca.gov/8933.htm.)  Despite the true-up, no reimbursement or "clawback" is due to Stupp unless his annual income is less than

3

$350,000 per year; if reimbursement is due, it will be carried forward to be reconciled in the next year's true-up. Through December 2015, no income is imputed to Schilders, and the first $4,000 per month of her income is excluded from true-up; starting January 2016, Schilders's earned income for purposes of the support true-up is the greater of $2,000 or her actual earned income. Other terms include the following: Stupp is to pay part of the child care expenses required for Schilders to work or obtain education toward future employment; spousal support cannot be modified unless, "due to involuntary cause," Stupp's income is less than $350,000 per year; spousal support terminates effective December 31, 2019 "subject to a *Richmond*[3] order, or on the death of either party, or [Schilders's] remarriage or registration as domestic partner, whichever first occurs;" Stupp's earned income for purposes of spousal support is capped at $400,000; and Stupp waives any right to spousal support from Schilders.

The Support Term Sheet reserves specific issues: "[t]he terms and conditions of the stipulation to be executed by the parties to retain Nancy Olesen, PhD as a parenting coordinator"; possession of the parties' animals; division and valuation of furniture, art and personal belongings;[4] and attorneys' fees and costs "from and after November 18, 2013." Judge Chernick's term is extended "through completion of the annual true-up to be done in 2016 for calendar year 2015 (with the understanding that [he] will only address child custody issues for as long as a [parenting coordinator] is in place.)"

Both the Property Term Sheet and the Support Term Sheet include the following language: "The parties agree that this agreement (i) is a judicially supervised settlement agreement, (ii) is binding and enforceable under CCP § 664.6 when signed by the parties and their counsel, and (iii) shall become an order of the court when signed by Judge Pro Tem Chernick. [¶] The parties further agree that jurisdiction is reserved for the court in the Action to resolve any disputes regarding implementation of this agreement and the language of any Marital Settlement Agreement and related judgment forms to

---

[3] *In re Marriage of Richmond* (1980) 105 Cal.App.3d 352 (*Richmond*).

[4] As we shall see, the division of that property was ultimately resolved that same day.

4

subsequently be prepared to more fully set forth this agreement. However, the parties understand that this agreement is binding on them, and shall be an order of the court, whether or not they subsequently sign any such documents."

On November 20, 2013, after the parties and their counsel executed the Support Term Sheet, Stupp's and Schilders's attorneys conducted voir dire of their clients on the record.[5] Judge Chernick then stated, "Based upon the respective voir dires of the parties

[5] The voir dire of Schilders follows:

"Ms. Shindell [Schilders's counsel]: Okay, Annemarie, we've spent all day working on this particular term sheet and that's before you. It's a three-page term sheet. Do you see this term sheet?

"Ms. Schilders: Yes, I do.

"Ms. Shindell: And you've signed the document that's before you. Correct?

"Ms. Schilders: Yes.

"Ms. Shindell: And this document, you will understand, will be attached to this transcript as an exhibit.

"Ms. Schilders: Uh-huh, yes.

"Ms. Shindell: The Support Term Sheet sets forth an outline of the terms regarding spousal support and child support; isn't that right?

"Ms. Schilders: Yes.

"Ms. Shindell: And the support terms on here have been reviewed at length with your counsel.

"Ms. Schilders: Uh-huh, correct.

"Ms. Shindell: As well as your CPA, Lucy Chung.

"Ms. Schilders: Yes.

"Ms. Shindell: And you have been given the opportunity to review all issues and potential responsibilities and rights regarding the terms that are set forth in this agreement with your counsel and expert.

"Ms. Schilders: Yes.

"Ms. Shindell: You were also given a proposal, draft of the support—the support agreement on October 26th by Clifford Chernick, isn't that right?

"Ms. Schilders: That's correct.

"Ms. Shindell: And you have reviewed that as well at length with your counsel?

5

"Ms. Schilders:  Yes.

"Ms. Shindell:  And it was considered in coming to the agreement that you entered into today.

"Ms. Schilders:  Yes.

"Ms. Shindell:  As part of this agreement, you have entered into a Richmond order.

"Ms. Schilders:  Yes.

"Ms. Shindell:  And do you understand what a Richmond order is?

"Ms. Schilders:  Yes.

"Ms. Shindell:  And you've had the opportunity to review this case today with your counsel; isn't that right?

"Ms. Schilders:  Yes.

"Ms. Shindell:  And you are entering into this agreement with this knowledge voluntarily today.

"Ms. Schilders:  Yes.

"Ms. Shindell:  And you have not entered into this agreement under any duress as of today.

"Ms. Schilders: No.

"Ms. Shindell: You understand that this order will be an order of the Court as of today.

"Ms. Schilders:  Yes.

"Ms. Shindell:  And even if there are—this agreement as to the terms in the Marital Settlement Agreement, the orders that are set forth in this three-page document shall stand forever more.

"Ms. Schilders:  Yes.

"Ms. Shindell:  Unless there's further order of the Court or agreement of the parties.

"Ms. Schilders:  Understood. . . .

"The Court: . . . [¶] Does either one of you have any questions at all about this termsheet, this three-page term sheet?  Is there any part of it that you do not understand?

"Ms. Schilders: (Shakes head from side to side).

"Ms. Shindell:  Audible answer, please.

"Ms. Schilders:  No."

6

by their counsel and what I personally experienced today, the Court also finds that each party has knowingly and intelligently entered into this agreement and understands the terms and conditions of this agreement."

That same day the parties also reached agreement as to the distribution of certain furniture and personal property. As reflected in the record, Stupp and Schilders memorialized that agreement by initialing a four-page document (Schedule of Assets) in the presence of Judge Chernick.

The transcript of proceedings reflects additional agreements made by the parties that day, which were not reduced to writing at that time. The parties jointly asked Judge Chernick to "draft the initial terms of the parenting coordination stipulation for the parties with [his] suggested terms," and agreed to "submit by email" with respect to two issues: their cats, and payment of attorneys' fees for November 20, 2013. Judge Chernick was authorized to speak with Stupp and Schilders directly if he had any questions.

B.      *Discussions Continue Through March 2014*

The record reveals little about what happened during the next few months. The family court's register of actions indicates only that in December a stipulation and order was filed regarding custody for the Christmas and New Year's holidays. The next entry in the register is for March 28, 2014, and reflects the entry of judgment and the mailing of notice of entry of judgment.

Other documents in the record help fill the blanks.[6] In December 2013, Stupp's attorneys sent Schilders's attorney a "proposed order after hearing in the form of a judgment." Stupp's attorneys emailed Judge Chernick and Schilders's attorney in January 2014, stating that Schilders's attorney had not objected or otherwise responded to the proposed order, and asking Judge Chernick to "sign and file the attached judgment to finalize this dissolution."

---

[6] The documents referenced in this part of the Factual and Procedural Background were submitted to the family court as attachments to declarations filed by Stupp and Schilders in connection with Schilders's motions to vacate the March 2014 judgment.

7

On March 6, 2014, Judge Chernick circulated a revised judgment to counsel for both parties. There was disagreement over certain terms to be included in the form of judgment, and "[t]he parties, through their counsel, submitted their positions to [Judge Chernick] in writing with regard to those provisions and stipulated that [he] had the authority to draft the final version of the judgment after considering the parties' respective positions on the disputed provisions." After telephone conversations with counsel and "numerous emails and exchanges of documents from counsel," on March 22 Judge Chernick emailed the parties' attorneys a final version of the judgment, reflecting changes he had made from the March 6 version. With regard to the appointment of the parenting coordinator, Judge Chernick wrote, "I inserted the verbiage as stated in the [November 20, 2013] transcript." Judge Chernick also explained that he had rejected Schilders's proposal to add some language to a paragraph regarding a life insurance policy, as well as Stupp's proposal to add a "Right to Claim Dependency Exemption" provision. Judge Chernick wrote, "This is the final form of the Judgment. Each party and counsel may indicate his/her approval of the form of the Judgment by dating and signing where indicated and returning his/her executed signature page to me by 5 PM on Wednesday, March 26 . . . . I will sign the Judgment, as written, sometime after 5 PM on Wednesday. Any executed signature pages received from any party or counsel will be included as part of the Judgment; and if any party or counsel has not sent his/her executed signature page to me by the time I sign the Judgment, I will 'line out' that person's signature block, probably also making a notation that the Judgment was signed by me without having been signed as approved by that person." Stupp's and Schilders's counsel "both . . . requested that the judgment be filed as expeditiously as possible."

C.    *Judgment Is Entered in March 2014*

On March 28, 2014, a judgment of dissolution was entered, consisting of Form FL-180[7] and several attachments (March 2014 judgment). Form FL-180 states that the

---

[7] The Judicial Council has designated Form FL-180 as mandatory for judgments of dissolution of marriage.

judgment reflects an agreement in court on November 20, 2013; among the attachments are the signed Property Term Sheet, the signed Support Term Sheet, and the initialed Schedule of Assets. We will refer to these three attachments collectively as the November Agreements. There are two other attachments to the Form FL-180: the 2012 custody order, and an "Attachment to FL-180 Judgment" (Attachment), which is the document that Judge Chernick circulated on March 22, 2014. The Attachment was signed by Stupp on March 24 and by his attorney and Judge Chernick on March 26, 2014. The signature lines on the Attachment for Schilders and her attorney are lined out, and the lines are initialed by Judge Chernick.

The Attachment includes recitals and a description of the events of November 19 and 20, 2013; it describes the documents that are attached to the Form FL-180, and the agreements the parties reached on the record made November 20; it also includes some terms that do not appear anywhere in the documents that Stupp and Schilders signed or initialed that day, or in the transcript from November 20. For example, the Attachment requires that Stupp make support payments to Schilders by the 15th of each month; states that the 2012 custody order, which had been designated a temporary order, "shall remain in full force and effect"; states that the parties agree that Stupp is current in his child support payments; and includes specific language as to the duration of child support.

Up to this point, nothing in the record suggests that Schilders objected in any way to the terms of the November Agreements, to the procedures Judge Chernick outlined in his March 22, 2014 email, or to the final judgment Judge Chernick prepared (except possibly to Judge Chernick's refusal to include her proposed language regarding the life insurance policy, which is not at issue in this appeal).

D.  *Schilders Moves to Vacate the Judgment under Section 663*

Five days after the judgment was entered, Schilders's counsel withdrew. Nine days later, on April 11, 2014, Schilders's new attorney filed two motions: one to withdraw the stipulation to use a temporary judge on the grounds that Schilders could not afford to pay him; and another to set aside and vacate the judgment pursuant to section 663, subdivision (1) (section 663 motion), on the grounds that the judgment was based on

9

an erroneous decision by the court.  Schilders noticed the motion to withdraw the stipulation for hearing on May 9, 2014, before the San Mateo County Superior Court, as she was required to do.  (Cal. Rules of Court, rule 2.831(f) ["motion to withdraw a stipulation for the appointment of a temporary judge . . . must be heard by the presiding judge or a judge designated by the presiding judge"].)  She noticed the section 663 motion for hearing before Judge Chernick, as she was required to do, with a date of May 20, 2014.  On May 9, Schilders's motion to withdraw the stipulation to use Judge Chernick was granted and the matter was assigned to Department 16, Judge DuBois, for all purposes.

Schilders's section 663 motion was never heard, and no ruling was issued within the 60-day period during which the court had jurisdiction over the motion.  As a result, the motion was denied by operation of law on May 27, 2014.[8]  Schilders's tactical decision to file two motions at the same time is part of the reason the section 663 motion was never heard:  when she filed the section 663 motion on April 11, 2014, Schilders noticed it for hearing on May 20, 2014, before Judge Chernick, who was removed from the case at her request on May 9.  On May 15, 2014, Schilders wrote to Judge DuBois, to whom the case had newly been assigned, asking him to set a hearing on the section 663 before May 27, 2014; on May 20 or 21, 2014, the court informed counsel for both parties that this request could not be accommodated.  Then, on May 23, 2014, Schilders sought an ex parte order asking that a hearing on the section 663 motion be set on or before May 27 before a judge other than Judge DuBois.  The family court denied the request to set the hearing, stating, "The court cannot accommodate such a motion to be heard within the very short time frame."

---

[8] Section 663a, subdivision (b) provides that, "the power of the court to rule on a [section 663] motion to set aside and vacate a judgment shall expire 60 days from the mailing of notice of entry of judgment . . . . If that motion is not determined within the 60-day period . . . the effect shall be a denial of the motion without further order of the court."

E.  *Schilders Moves to Vacate the Judgment under Section 473*

Meanwhile, on May 19, 2014, Schilders had filed a motion to vacate the "judgment and term sheets" under section 473, subdivisions (b) and (d) (section 473 motion), arguing that section 473 provided "additional bases" to vacate the judgment in addition to the grounds she had advanced in her section 663 motion. Specifically, she argued that the March 2014 judgment had been taken against her through mistake, inadvertence, surprise or excusable neglect (§ 473, subd. (b)) and that the March 2014 judgment was void because Judge Chernick lacked jurisdiction to sign and file it. (§ 473, subd. (d).) Schilders claimed that these "additional bases" had not been raised previously because her former attorney bore "some or much of responsibility for the mistake, inadvertence, surprise or excusable neglect of Respondent," and because her new attorney "lacked the time to assert" those issues in the section 663 motion.

The section 473 motion relied on the same April 11, 2014, declaration by Schilders that was submitted with the section 663 motion and raised the issues addressed in the section 663 motion as well as others. Schilders argued that she had not stipulated to all the terms of the March 2014 judgment; that the March 2014 judgment contains misrepresentations about Judge Chernick's role; that she did not understand the terms to which she agreed; that she was unwell on November 20 and on many days between November 2013 and March 2014; that her agreements to the terms had been induced through duress and mistake; that she had been misled by her former counsel; that the term sheets included unlawful terms; that Stupp failed to disclose the value of assets; that she was improperly charged with speculative and uncertain imputed earnings; that the settlement agreement was inequitable; and that Judge Chernick had no jurisdiction to sign the judgment.

F.  *The Court Denies the Section 473 Motion, and Orders the Judgment Be Modified*

Schilders's section 473 motion was heard on June 23, 2014. After hearing argument on the scope of Judge Chernick's authority and whether there was mistake, inadvertence, surprise or excusable neglect, Judge DuBois heard point-by-point argument on Schilders's objections to the Attachment. Judge DuBois went over the provisions in

11

the Support Term Sheet that Schilders was challenging "one by one" at Schilders's request. After hearing extensive argument from both parties' counsel, Judge DuBois ruled as follows: "The Court's going to deny the motion to set aside the judgment. Under 473(b), the Court does not find that the declarations are [sic] properly set forth that the judgment was entered as a result of excusable mistake, inadvertence, neglect and so forth. I don't think the declarations support that. [¶] The Court is also going to deny the motion to set aside the judgment under 473(d), and the Court does not find the judgment was void and that the judge did not act beyond his jurisdiction, and that the attachments were all valid and supportable in and of themselves and were merely incorporated into the judgment. [¶] The Court is, however, going to modify certain terms of the judgment agreeing that the terms were not agreed to between the parties."

In response to arguments raised by Schilders in her papers and at the hearing, Judge DuBois then ordered specific modifications to the Attachment that Judge Chernick had drafted and included in the March 2014 judgment. Here, we summarize those modifications. The court reserved jurisdiction of attorney fees "from [and] after November 18th," 2013, rather than "from November 19th and 20th," to reflect the provisions of the Support Term Sheet. The court struck the provision that issues regarding attorney fees and the possession of the parties' cats could be submitted by email. The court ordered that spousal and child support were to be payable on the first of each month, rather than the 15th, in response to Schilders's argument that she never agreed to payment on the 15th, and a representation by Schilders's counsel that Schilders preferred to be paid on the first. The court modified the child custody provision to say that the July 2012 order "shall remain as a temporary order until modified by the court," rather than that the order "shall remain in full force and effect." The court struck the statement that the parties agreed that Stupp was current on his child support payments. And the court modified the duration of child support to state that support would continue "until the first of the following events: (i) the child attains age 19; (ii) the child attains age 18 and completes the 12th grade; (iii) the child dies; (iv) the child is otherwise emancipated; or (v) further court order." All these points were urged by Schilders.

12

Judge DuBois made a specific finding that the Property Term Sheet and Support Term sheet would "stand alone on their own," and finished by saying, "so that's the ruling on the motion."

Stupp's counsel was directed to prepare a formal order. A minute order dated June 23, 2014 states, "Motion to vacate judgment is DENIED. Motion to set aside judgment is DENIED. The Court modifies the Binding Agreement as stated. [Stupp's counsel] shall prepare a formal order consistent with the orders herein."

On June 26, 2014—after the hearing on the section 473 motion, but before a written order was signed or filed—Schilders filed notice that she was appealing from the "judgment or order in this case, which was entered on . . . 3/28/14, 6/23/14, & by not being heard in time." The final phrase apparently refers to Schilders's section 663 motion, which is mentioned elsewhere in the notice of appeal.

A formal order on the section 473 motion was eventually prepared, tracking the statements made by Judge DuBois at the hearing: the order denied the motions and gave reasons for the denial; set forth how the judgment was to be modified; and included an unsigned draft of the Amended Judgment as Exhibit A, along with a notice of entry of judgment for the clerk to complete. The order was signed by Judge DuBois on July 28, 2014. That same day, Judge DuBois signed another order in the case, addressing issues that had been raised in a hearing that was held on June 10, 2014. The order denying the section 473 motion was apparently inadvertently attached to that other unrelated order, and the entire package was file-stamped on September 19, 2014, as a single document and entered in the register of actions as findings and order after the June 10 hearing. Thus, although the document was filed, the record does not reflect that the amended judgment was ever entered as a judgment, or that notice of entry of judgment was ever served.

## DISCUSSION

Schilders's notice of appeal was filed on June 26, 2014, and is therefore timely with respect to the March 2014 judgment, the denial of the section 663 motion, and the

13

postjudgment order made on June 23 in response to the section 473 motion, each of which she appeals. The parties do not dispute the timeliness of the notice.[9]

A.      *Principles of Appellate Practice*

A fundamental principle of appellate review is that a judgment or order that is challenged on appeal is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to affirmatively demonstrate error. (*Ibid.*)

As appellant, Schilders has the burden "to support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.] In addition, citing cases without any

_____

[9] The time to appeal the March 2014 judgment, which was entered on March 28, was extended by Schilders filing the section 663 motion on April 11, 2014. (Cal. Rules of Court, rule 8.108(c).) That motion was denied by operation of law on May 27, 2014, with the result that the deadline to appeal the judgment was extended to July 10, 2014, which is 90 days after the date on which the motion was filed. (Cal. Rules of Court, rule 8.108(c)(2); Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 3:81, p. 3-39 (Eisenberg et al.).)

After Schilders filed her opening brief, Stupp moved to dismiss the appeal for lack of jurisdiction as to the June 23, 2014 order. Stupp argued that the ruling on Schilders's section 473 motion was not subject to appeal because the written order had not been separately file-stamped by the superior court clerk. We denied Stupp's motion to dismiss without prejudice to his raising the issue of jurisdiction in his respondent's brief, which he elected not to do.

At the June 23, 2014 hearing, the family court announced its order on Schilders's section 473 motion on the record and directed Stupp's counsel to prepare a written order. The order was prepared, signed by Judge DuBois on July 28, and filed by the clerk, though not separately file-stamped and entered in the register of actions, on September 19. The order was therefore entered on September 19, 2014. (Cal. Rules of Court, rule 8.104(c)(2) ["if the minute order directs that a written order be prepared, the entry date is the date the signed order is filed"]; *Ten Eyck v. Industrial Forklifts* (1989) 216 Cal.App.3d 540, 545 [" 'filing' does not include or require entry . . . in the register of actions"].) When a notice of appeal is filed after the court has ruled, but before the order is entered, the notice of appeal as to that order is valid, and is deemed filed immediately after the order's entry. (Cal. Rules of Court, rule 8.104(d)(1); *In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 906.) Accordingly, notice of appeal was valid as to the June 23 order.

14

discussion of their application to the present case results in forfeiture. [Citations.] We are not required to examine undeveloped claims or to supply arguments for the litigants." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).)

To the extent an appellant makes arguments that rely on evidentiary issues, the appellant cannot include only favorable evidence in the opening brief. The Rules of Court require appellant to summarize all "significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(a)(2)(C).) Failure to state all of the evidence fairly in the brief waives alleged error. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*); *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 737-738.)

The appellant has the burden not only to show error, but also to show prejudice from that error. If appellant does not satisfy that burden, the argument will be rejected on appeal. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963 (*Century Surety*).)

Bearing these principles in mind, we turn to Schilders's arguments on appeal.

B.      *Schilders's Section 663 Motion*

Promptly after the March 2014 judgment was entered, Schilders filed a motion under section 663, subdivision 1, to set aside and vacate the judgment and set a date for trial. She argued that the March 2014 judgment should be set aside for several reasons: Judge Chernick reached his own decisions, and there was no legal basis for those decisions because there had been no trial; she did not consent to "many terms" in the judgment; she did not stipulate to enter the judgment; the judgment included unlawful terms; the parties' agreements were inequitable; the agreements include terms that were induced by duress and mistake; and Judge Chernick had no jurisdiction to sign the judgment. The motion was denied by operation of law because it was not heard within 60 days of the entry of judgment. (§ 663a, subd. (b).) Schilders argues here that the family court abused its discretion by not hearing the motion.

15

We begin our analysis of this issue by examining Stupp's contentions that section 663 does not apply to this matter, and that it is questionable whether denials of motions brought under section 663 are appealable.

It is far from clear that the family court could have properly granted Schilders's motion, even if the motion had been heard. Section 663 allows a party to challenge a judgment that was based on a judge's decision in a bench trial or a special verdict of a jury. (§ 663, subd. 1.) The aggrieved party can move to have the judgment set aside and vacated and a new judgment entered if the trial court "draws incorrect conclusions of law or renders an erroneous judgment on the basis of uncontroverted evidence." (*Simac Design, Inc. v. Alciati* (1979) 92 Cal.App.3d 146, 153.)

In her brief, Schilders does not cite any cases interpreting section 663. That is not surprising, because hornbook law indicates that the motion was inappropriate under the circumstances. First, "section 663, by its own terms, applies only to a decision of the court based upon facts or to a special verdict of a jury." (*Plaza Hollister Limited Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 14.) As Stupp points out, a stipulated judgment based on a negotiated settlement agreement, is neither a decision of the court based upon facts nor a special verdict. " ' "In the case of a stipulated judgment, it is impossible for a court to say that the judgment is not consistent with or not supported by the facts and it is impossible to substitute the correct judgment which is consistent with and supported by the facts." ' " (*Ibid.*) Schilders, of course, claims that the March 2014 judgment is not in fact a stipulated judgment, but she does not explain how section 663 can apply in the absence of a bench trial or special verdict.

That is not the only problem with Schilders's section 663 motion. Schilders asked for the judgment to be vacated, but she did not ask for a new different judgment to be entered—she asked for a trial. A motion to vacate a judgment pursuant to section 663, however, "does not contemplate merely setting aside the judgment, as does a motion for new trial or a motion for relief from a judgment for mistake, inadvertence, surprise, or neglect. It expressly provides for vacating the judgment and entering another judgment.

16

Hence, an order of vacation, without directing entry of a new judgment, is void." (8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 142, p. 735.)

Despite these deficiencies in Schilders's motion, we will assume for purposes of argument that the motion was appropriately brought under section 663. Even so, the family court's denial of the section 663 motion might not be appealable. In *Clemmer v. Hartford Ins. Co.* (1978) 22 Cal.3d 865 our Supreme Court wrote that there are no appeals from orders that deny motions brought under section 663. (*Id.* at p. 890.) In that decision, however, the Supreme Court did not discuss the "long-established precedent" that orders denying statutory motions to vacate judgments, like motions brought under section 663, are appealable as orders after final judgment. (Eisenberg et al., *supra*, ¶¶ 2:169-2:174, pp. 2-117 - 2-119.) Since then, some decisions of the Courts of Appeal have treated such orders as appealable, and some have not. *Howard v. Lufkin* (1988) 206 Cal.App.3d 297, 303, applies "the well-settled principle that denial of a statutory motion to vacate judgment is an appealable order," but *City of Los Angeles v. Glair* (2007) 153 Cal.App.4th 813, 820, concludes that the denial of a section 663 motion is not appealable.

A different line of cases holds that " 'when an appellant attacks an order on the ground that it gives effect to a judgment that is void for lack of jurisdiction by the trial court, the general rule prohibiting appeal does not apply.' " (*In re Marriage of Goodarzirad* (1986) 185 Cal.App.3d 1020, 1030-1031 (*Goodarzirad*), quoting *County of Ventura v. Tillett* (1982) 133 Cal.App.3d 105, 110-111.) Following that line of cases, we might conclude that the denial of the 663 motion is appealable, reasoning that *Goodarzirad* applies because Schilders's section 663 motion included arguments that Judge Chernick lacked jurisdiction to sign the March 2014 judgment and that therefore the judgment is void. Here, we will assume without deciding that the denial is appealable and move on to consider the merits.

The only error that Schilders assigns to the family court with respect to her section 663 motion is that the family court abused its discretion by "not hear[ing] the CCP § 663 motion at all." Yet Schilders cites no authority to support her position that the denial of a section 663 motion by operation of law under section 663a, subdivision (b) is an error.

17

As the appellant, Schilders has the responsibility "to support claims of error with meaningful argument and citation to authority." (*Allen*, *supra*, 234 Cal.App.4th at p. 52, citing Cal. Rules of Court, rule 8.204(a)(1)(B) and *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)  Because Schilders does not provide legal argument with citation to authority, we may treat that point as forfeited (*Allen*, *supra*, 234 Cal.App.4th at p. 52), and we do so.

Even if the family court had erred in failing to hear Schilders's section 663 motion, Schilders would not prevail because she has not met her burden to show prejudice.  (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337 [" 'The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice,' " quoting *Cucinella v. Weston Biscuit Co.* (1954) 42 Cal.2d 71, 82].)  Stupp argues that the family court's failure to hear the section 663 motion did not prejudice Schilders, and that we must therefore affirm the denial pursuant to section 475, which requires us to disregard any nonprejudicial error. Schilders's only response is to state that she was prejudiced by having "to suffer the delay and costs of having to write and file another motion, and not to be heard on the legal bases specified by CCP § 663 in a timely manner."

Schilders's claim of prejudice is belied by the record.  Schilders prepared and filed her section 473 motion on May 19, 2014, before she knew that her section 663 motion would not be heard within the statutory period.  In the section 473 motion, Schilders explained why she was filing it:  not because of any concern about a hearing on her section 663 motion, but rather because she wanted to raise issues that she "lacked the time to assert" in her section 663 motion.  The arguments that Schilders raised in her section 663 motion were raised in her section 473 motion as well, and were heard by the family court just one month after the originally-scheduled hearing on her section 663 motion.  In these circumstances, we conclude that Schilders has not met her burden to demonstrate prejudice from the denial of the section 663 motion by operation of law.

18

Thus, we affirm the denial of the section 663 motion because even if the denial of the section 663 motion was appealable, and even if the denial was in error, Schilders has not shown prejudice. (§ 475; *Century Surety*, *supra*, 139 Cal.App.4th at p. 963.)

C.    *Schilders's Section 473 Motion*

We turn now to the Schilders's claims of error surrounding the denial of her section 473 motion to vacate the March 2014 judgment.

1.    *The Family Court Had Jurisdiction to Rule on Schilders's Section 473 Motion*

Schilders contends that by filing her notice of appeal of the March 2014 judgment on June 26, 2014, she divested the family court of jurisdiction to modify or vacate that judgment.[10] She cites no authority to support that position—not even section 916, which we discuss below. Her failure to cite appropriate authority would justify our passing over her contention without further comment. (*Allen*, *supra*, 234 Cal.App.4th at p. 52.) We address her argument here to highlight an inconsistency inherent in her appeal.

Schilders made a motion to vacate a judgment under section 473. Her motion was heard on June 23, 2014, and the family court pronounced its ruling in open court. The family court ordered changes in the judgment that addressed some of her objections, but found that the judgment was not void and therefore did not vacate the judgment. Because she did not like that result, Schilders filed a notice of appeal, stating that she was appealing the family court's June 23 ruling. On appeal, she argues that the court should have granted her section 473 motion, yet she also claims that by filing the notice of appeal she divested the family court of jurisdiction to rule on her motion. Schilders

_____

[10] Schilders also claims that the family court had no jurisdiction to rule on her section 473 motion because "the trial court's jurisdiction to modify or vacate the judgment had ended" with the passage of 60 days from the entry of the March 2014 judgment. This argument is meritless. Schilders supports her position with citations to section 663a, which is limited to motions to vacate under section 663 and has no application to Schilders's motion here, which was brought under section 473, subdivisions (b) and (d). By its terms, subdivision (b) permits motions to be made up to six months after judgment. (§ 473, subd. (b).) Subdivision (d) does not impose any time limit for motions. (§ 473, subd. (d).)

19

nowhere explains the contradiction between her claim that because she had filed a notice of appeal, the family court had no jurisdiction to modify or vacate the judgment in response to her section 473 motion, and her claim that the family court erred by not vacating the judgment pursuant to her section 473 motion.

We reject Schilders's contention that she divested the family court of jurisdiction to rule on her motion by filing a notice of appeal after the family court announced its ruling but before a formal order was entered.

Pursuant to section 916, filing a notice of appeal ordinarily "stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." (§ 916, subd. (a); see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 17, p. 78.) The purpose of the stay " 'is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The [automatic stay] prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.' " (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189 (*Varian*), quoting *Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629 (*Elsea*).) To determine whether a proceeding is embraced in or affected by the appeal, "we must consider the appeal and its possible outcomes in relation to the proceeding and its possible results. '[W]hether a matter is "embraced" in or "affected" by a judgment [or order] within the meaning of [section 916] depends on whether postjudgment [or postorder] proceedings on the matter would have any effect on the "effectiveness" of the appeal.' [Citation.] 'If so, the proceedings are stayed; if not, the proceedings are permitted.' " (*Varian*, *supra*, 35 Cal.4th at p. 189.) In other words, if the possible outcome on appeal and the actual or possible outcome of the motion are incompatible, the motion affects the effectiveness of the appeal. (*Id.* at p. 190.)

Accordingly, a trial court's jurisdiction to vacate or modify an appealed judgment is generally suspended while an appeal from the judgment is pending. (*Varian*, *supra*, 35 Cal.4th at pp. 189-190.) This issue typically arises in the context of a motion to vacate

20

judgment that is filed after a notice of appeal has been filed. (*Elsea*, *supra*, 4 Cal.App.4th at p. 628.) In such circumstances, granting a motion to vacate would vitiate the pending appeal, and therefore the motion is stayed. Here, in contrast, Schilders filed her motion to vacate judgment *before* the notice of appeal was filed, and the motion was heard before the notice of appeal was filed. When Schilders appealed on June 26, 2014, from the March 2014 judgment and from the rulings on her motions to vacate, including her section 473 motion, both parties were aware of the family court's ruling on the section 473 motion, which was set forth in detail on the record on June 23, 2014. Because the disposition of Schilders's section 473 motion was known to all parties, and was neither tentative nor ambiguous in any way, and because the June 23 order was included in Schilders's appeal from the very beginning, we would be elevating procedural technicalities over substance to say that the family court lacked jurisdiction to sign the order that it had previously announced in open court. *Casa De Valley View Owner's Association v. Stevenson* (1985) 167 Cal.App.3d 1182 is instructive here. In that case, the trial court's ruling on a motion was entered in the court's minutes and counsel was directed to prepare a judgment. (*Id.* at p. 1186.) Before the written order and judgment was prepared and entered, a party filed a voluntary dismissal. (*Id.* at p. 1188.) The Court of Appeal rejected the contention that the dismissal divested the trial court of jurisdiction to enter the order and judgment, noting that at the time the court granted the motion, there was no question that it had jurisdiction to act. (*Id.* at p. 1191.) "There was nothing tentative or preliminary about the minute order. The order explicitly stated that 'the court now makes its decision and ruling as follows,' expressly announced that the motion was 'GRANTED,' and described in detail the essential holdings to be included in the form of judgment. The court properly could delegate to . . . counsel the clerical or ministerial act of drafting a form for entry of a formal judgment." (*Id.* at p. 1193.)

Therefore, we consider the substance and merits of the family court's ruling on Schilders's section 473 motion.

21

2. *The Family Court Did Not Err in Denying Schilders's Motion under Section 473, Subdivision (b)*

Schilders asked the family court to vacate the March 2014 judgment pursuant to section 473, subdivision (b), which allows a trial court to "relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect" and subdivision (d), which allows a trial court to "set aside any void judgment."

We review the denial of a motion to vacate a judgment under the discretionary provisions of section 473 for abuse of discretion. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257-258; *Rodriguez v. Henard* (2009) 174 Cal.App.4th 529, 534-545.) We resolve any factual conflicts in the evidence in favor of the prevailing party. (*In re Marriage of King* (2000) 80 Cal.App.4th 92, 118 ["A ruling on . . . a motion [to set aside under section 473] rests within the sound discretion of the trial court, and will not be disturbed on appeal in the absence of a clear showing of abuse of discretion, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice."].)

a. *Substantial Evidence Supports the Family Court's Finding that Schilders Did Not Show Mistake, Inadvertence, Surprise, or Excusable Neglect*

The family court found that the declarations submitted by Schilders did not support her claim that the March 2014 judgment was entered as a result of mistake, inadvertence, surprise or excusable neglect. We review the family court's findings of fact for substantial evidence. (*In re Marriage of Gonzalez* (1976) 57 Cal.App.3d 736, 745 ["The power of a reviewing court begins and ends with a determination of whether there is in the record substantial evidence, contradicted or uncontradicted, which supports the result reached; and we must also assume in favor of the determination below the existence of every fact which the trier of facts could have reasonably deduced from the evidence."].) We presume "that the trial court made all factual findings necessary to support the judgment [or order] for which there is substantial evidence; all intendments are indulged in favor of the judgment or order, and appellate review is limited to

22

searching the record for any substantial evidence that will support the lower court's 'implied findings.' " (Hogoboom et al., Cal. Practice Guide: Family Law (The Rutter Group 2015 ¶ 16:215, p. 16-76 (Hogoboom).) Our review of the record reveals that the family court's findings are supported by substantial evidence, and that there is nothing in the record to indicate any abuse of discretion by the family court.

Judge DuBois had before him a declaration by Schilders dated April 11, 2014, correspondence from Judge Chernick that Schilders provided with her motion, a declaration by Stupp's counsel, and a transcript of the November 20 proceedings before Judge Chernick, which included the voir dire of Schilders by her counsel (which we quoted extensively above).[11]

Schilders put forward little evidence to support her argument of mistake, inadvertence, surprise or excusable neglect, and the evidence and argument that she did present was belied by statements she made at the time she agreed to settlement terms. Schilders's declaration stated she "was not informed of the significance of some of the words and terms that were used" in the agreements that she signed in November 2013; that she "was feeling sick on November 20, 2013 and was under a lot of pressure for many hours in the judge's office"; and that she "was feeling sick on November 20, 2013 during the entire time that I was in the judge's office, during the talks that resulted in the agreements, and during the talking that was recorded by the Court reporter."

Schilders's April 2014 declaration flatly contradicted statements she made before Judge Chernick in voir dire on November 20, 2013, where she answered "no" to the court's questions, "Does either one of you have any questions at all about this term sheet, this three-page term sheet? Is there any part of it that you do not understand?" And Schilders's suggestion that the judgment should be vacated because she was under duress is contradicted by her statement before Judge Chernick on November 20 in voir dire that

---

[11] Notably, Schilders's motion omitted discussion of the extensive voir dire conducted by Schilders's former counsel before Judge Chernick. The transcript of the November 20 proceedings was provided to Judge DuBois in connection with Stupp's opposition papers.

she was not under any duress. Thus, Schilders presented the court with scanty and contradicted evidence.

Furthermore, Stupp presented evidence to indicate that Schilders had been represented by counsel during the settlement negotiations, and had been accompanied by a forensic accountant on both November 19 and 20. He also presented uncontradicted evidence that the Property Term Sheet had been through 12 drafts, and incorporated revisions requested by both sides.

Moreover, Schilders failed to provide the family court with pertinent authority to support her claim under section 473, subdivision (b) and she cites no pertinent authority here. She offers no authority to support her claim that failure to understand some unspecified words in the agreements would justify vacating the judgment, and she offers no authority to support her claim that feeling sick or being under a lot of pressure could constitute grounds for vacating a judgment. Being "under a lot of pressure" does not constitute duress: duress "destroys one's free agency and constrains [one] to do what is against [one's] will." (*In re Marriage of Gonzalez, supra,* 57 Cal.App.3d at p. 744.) Schilders made no showing that anyone threatened or pressured her to enter agreements to her detriment, nor that she was subject to coercion that induced her assent where she had "no reasonable alternative to succumbing." (*In re Marriage of Baltins* (1989) 212 Cal.App.3d 66, 84 [explaining the modern definition of duress, which is less stringent than the definition codified in Civil Code section 1569].)

Thus, we reject Schilders's argument that the family court abused its discretion in denying her motion under section 473, subdivision (b).

b.    *Fairness and Equity Do Not Require Vacating the March 2014 Judgment*

The family court properly rejected Schilders's argument in her section 473 motion that the March 2014 judgment should be found inequitable and therefore be set aside, and we reject her argument here.[12] Schilders's argument ignores a crucial provision of the

---

12 Schilders's section 473 motion does not state whether this argument was advanced under section 473, subdivision (b). We assume that it was, because one of the

24

Family Code, which states unequivocally that "a judgment may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the division of assets or liabilities to become inequitable, or the support to become inadequate." (Fam. Code, § 2123.) Family Code section 2123 applies to judgments entered on or after January 1, 1993 (Fam. Code, § 2129), and was enacted after the cases on which Schilders relies. "[T]o whatever degree section 473 jurisprudence might have . . . countenanced the setting aside of a family law judgment because it was somehow "inequitable," that discretion has now been expressly curtailed. [¶] [Family Code] section 2123 represents a fixed legal principle that may not be substantively contravened by the trial court in considering a discretionary application for relief under section 473." (*In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 33.)

   3. *The Family Court Did Not Err in Denying Schilders's Motion under Section 473, Subdivision (d)*

   Schilders argues that the family court abused its discretion in denying her motion under section 473, subdivision (d), which authorizes the family court to set aside a void judgment or order. Schilders argues that because the family court had no jurisdiction to enter the March 2014 judgment, that judgment is void and that therefore the denial of her motion to vacate that judgment gives effect to a void judgment and is itself void and is therefore appealable. She relies on *Goodarzirad*, *supra*, 185 Cal.App.3d at pages 1030-1031, which holds that when an appellant attacks an order denying a motion brought under section 473 on the grounds that the order gives effect to a judgment that is void, the order is appealable if the underlying judgment is appealable. But appealability is not at issue here.

   In her section 473 motion, and on appeal, Schilders contends that the March 2014 judgment is void for four separate reasons. First, Judge Chernick lacked jurisdiction to

---

cases Schilders cites in the relevant part of the motion—the only case she cites in that part of her brief that actually was decided under section 473—was decided under provisions corresponding to what is now subdivision (b). (*Gregory v. Gregory* (1949) 92 Cal.App.2d 343, 345.)

25

sign a judgment incorporating the agreements she and Stupp reached in November 2013. Second, the Support Term Sheet, which is part of the judgment, includes unlawful terms. Third, the judgment includes her minor child's name and birth date without her consent and in violation of a standing order of the family court. Fourth, the judgment includes terms authored by Judge Chernick, to which Schilders did not agree.

We address these arguments in turn, mindful that whether a judgment is void is a question of law, which we review do novo. (*Nixon Peabody LLP v. Superior Court* (2014) 230 Cal.App.4th 818, 822; *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 496 (*Cruz*).) For the reasons we explain below, we agree with the family court that the March 2014 judgment is not void. Section 474, subdivision (d) allows the court to set aside only void judgments. Because the family court has no authority under section 473, subdivision (d) to set aside a judgment that is not void (*Cruz, supra,* 146 Cal.App.4th at pp. 495-496), the family court did not abuse its discretion when it denied Schilders's motion to set the March 2014 judgment aside.

We also conclude that the family court acted within its jurisdiction in responding to Schilders's objections by modifying certain provisions in the March 2014 judgment to conform with the agreements reached by Stupp and Schilders in November 2013.

> a.   *Judge Chernick Did Not Err in Entering the Parties'*
> *November 2013 Agreements as a Judgment*

Schilders argues that the March 2014 judgment is void because it was entered without a motion having first been made under section 664.6, which provides that if parties to litigation stipulate to settle a case or part of it, the court, upon motion, may enter judgment pursuant to the terms of the settlement. Schilders argues that "[w]ithout a [section] 664.6 motion, the judgment could not have been entered without Schilders' consent and it is therefore void on its face." This statement apparently means that because there was no section 664.6 motion, the judgment must have been entered without Schilders's consent, and that therefore the judgment is void on its face. But the statement does not follow from the two cases that Schilders cites to support it. *Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 181, simply stands for the uncontroversial proposition that

26

the invalidity of a judgment may be apparent on the face of the record; *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830-831, concerns the circumstances in which a default judgment may be void.

Schilders contends on appeal that she did not agree to have the November 2013 agreements incorporated into a judgment. But Schilders and Stupp agreed in writing, in the Property Term Sheet and Support Term sheet, that they would be bound by the agreements they reached on November 19 and 20; that the agreements were orders of the court; and that the family court had jurisdiction to resolve any disputes that might arise as to the implementation and language of any related judgment forms that were to be prepared. They also agreed that even if they did not sign the judgment forms, or any other documents that would set forth their agreements, they would be bound by their agreements.

Schilders concedes, as she must, that the November 2013 agreements were enforceable on their own under section 664.6, that the November agreements were incorporated and merged into the March 2014 judgment, and that a settlement agreement is enforceable if it has been incorporated in the judgment, even if the agreement has not been entered as a judgment under section 664.6. (Hogoboom, *supra*, ¶ 9:443, p. 9-165.) Significantly, Stupp and Schilders *waived* any requirement of a motion or hearing under section 664.6 by agreeing that their agreements "shall become an order of the court when signed by Judge Pro Tem Chernick," and by agreeing that their agreements were binding orders of the court, whether or not they signed any subsequent Marital Settlement Agreement or related judgment forms.

Schilders contends that she had no notice or opportunity to be heard as to any arguments that the November Agreements were "improper to enforce as contracts," and that if Stupp had made a motion under section 664.6, she would have had the opportunity "to provide evidence or dispute facts on whether the term sheets should become the judgment, to provide evidence that the agreements resulted from duress, deception, fraud, coercion, or overreaching, that there was a failure of consideration or violations of law on

27

child and spousal support."[13]  But it is apparent from the record that Schilders had ample opportunity to raise those arguments at any time between November 20, 2013, when she signed the Support Term Sheet and the Schedule of Assets, and March 28, 2014, when the judgment was entered, but declined to do so.

In sum, by her signatures on the Property Term Sheet and Support Term Sheet, her initials on the Schedule of Assets and her statements on the record before Judge Chernick, Schilders agreed to the incorporation and merger of the November Agreements in a judgment.  Accordingly, we reject Schilders's argument in her reply brief that the entry of the March 2014 judgment without a hearing under section 664.6 reflects structural error or a denial of due process.  We conclude that in these circumstances there was no need for Stupp to file a motion under section 664.6, and that the March 2014 judgment is not void insofar as it incorporates the November Agreements.

   b.  *The Support Term Sheet Does Not Include Unlawful Terms*

In her section 473 motion, Schilders argued that the agreements she reached in November 2013 contain unlawful and unenforceable terms—specifically, that the Support Term Sheet includes unlawful terms pertaining to spousal support and child support.[14]  She argues here that Judge Chernick exceeded his jurisdiction or abused his discretion by signing a judgment that included those terms, and that Judge DuBois abused his discretion by refusing to vacate a judgment that included those terms.  Schilders asserts that that the terms at issue "violate the policy of the law."  Because Schilders raises issues about the legality of provisions in a settlement agreement, she poses questions of law that we review de novo.  (*Timney v. Lin* (2003) 106 Cal.App.4th 1121, 1125-1126.)

---

[13] Schilders takes inconsistent positions with regard to the validity of the family court's entry of judgment.  She asks that the agreements she reached on November 19 and 20 be set aside and the judgment vacated, yet she has no objection to the entry of a judgment that marital status terminated on December 31, 2013, a provision to which she agreed in the Support Term Sheet.

[14] Schilders does not argue that the Property Term Sheet or Schedule of Assets contains unlawful terms.

In examining the terms Schilders claims to be unlawful, we bear in mind that in a marital settlement agreement, spouses may contract away or limit their right to postdissolution spousal support. "Assuming their contract is otherwise valid and enforceable, a provision waiving or fixing postdissolution support is enforceable according to its terms." (Hogoboom, *supra*, ¶ 9:25, p. 9-9, citing *Adams v. Adams* (1947) 29 Cal.2d 621, 626-627.) Spouses are more constrained in reaching agreements on child support. The family code sets forth a formula that defines the "guideline" amount of child support. Although spouses can generally agree to support payments that are higher than the guideline, the family code requires parties to meet specific requirements before agreeing to payments that are below the guideline. (Fam. Code, §§ 4055, 4065, subd. (a).)

(i)     *The True-up Provision Is Not Unlawful*

Schilders claimed in her section 473 motion, and claims here, that the Support Term Sheet is unlawful because it specifies that support amounts are subject to annual true-up and therefore might require her to eventually pay back some money to Stupp. She cites provisions of the Code of Civil Procedure and the Family Code to support her claim that true-up "materially affects Schilders right to a judgment for an amount . . . that is final . . . monthly child and spousal support." And she writes, "While a bonus can be ordered as a percentage of yet-undetermined amounts (*In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 [(*Ostler & Smith*)]), base monthly spousal and child support may not be subject to a refund."[15]

Nothing in the authorities that Schilders cites suggests that her agreements with Stupp for child and spousal support are in violation of law or public policy. Section 577 defines a judgment as "the final determination of the rights of the parties in an action or proceeding," and section 577.5 states that the amount of a judgment "shall be computed and stated in dollars and cents, rejecting fractions." Family Code section 4055,

---

[15] Schilders also claims that "[t]he retroactive modification of spousal support creates an improper tax burden to Schilders." She cites no authority to support this argument, and hence she has forfeited it. (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

subdivision (b)(1)(A) is part of the statewide uniform guidelines for court-ordered child support, and indicates that child support is an "amount." Family Code section 4057, subdivision (a) states that the guideline support amount is presumed to be the correct amount of support to be ordered. The fact that the family court can order a spouse to pay base spousal and child support plus additional amounts based upon a percentage of bonuses that the spouse may receive (*Ostler & Smith*, *supra*, 223 Cal.App.3d at p. 37) in no way limits Stupp's and Schilders's ability to agree to support payments that are subject to true-up based upon their actual income over the course of a year.

Schilders claims that the true-up provision constitutes an impermissible retroactive modification of child and spousal support. Family Code section 3651, subdivision (c), on which Schilders relies for this contention, concerns the modification of a support order by a court in connection with a motion or order to show cause. Nothing in that section, or in any of the cases that Schilders cites, supports the notion that the true-ups are orders that "retroactively modify" an original support order. Rather, the true-ups are incorporated in the original support order to which Schilders agreed.

Schilders also contends that the true-up provision impermissibly limits the court's jurisdiction to order child support. We disagree. Nothing in the Support Term Sheet in any way purports to limit the court's jurisdiction over child support, and it is perfectly clear from the cases that Schilders cites that the family court continues to exercise its jurisdiction over child support, and may modify child support orders after judgment. (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 386 (*Bodo*); *In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 469 (*Lusby*).)

(ii)     *Imputing Earnings to Schilders Is Not Unlawful*

In signing the Support Term Sheet, Schilders agreed that effective January 1, 2016, her earned income would be the higher of $2,000 per month or her actual earned income. In her section 473 motion below, and in her briefs here, she argues that imputed earnings of $2,000 per month—to which she agreed—are "speculative and uncertain," and she cites *Marriage of McTiernan and Dubrow* (2005) 133 Cal.App.4th 1090, 1107-1108 (*McTiernan*), for the proposition that that it is an abuse of discretion for a court to

30

charge a supported spouse with such imputed earnings. *McTiernan* does not help Schilders. In that case, the family court lacked evidence to support its finding that the wife had the capacity to earn a similar amount after the marriage as during the marriage, and the finding was contradicted by the family court's own statement that the wife's earning capacity was " 'almost nonexistent.' " (*McTiernan*, *supra*, at p. 1108.)

In this case, however, the family court made no finding as to Schilders's earning ability, but rather found that she and Stupp were represented by counsel and entered into an agreement "knowingly and intelligently," with understanding of the agreement's terms and conditions. There is no violation of public policy in Schilders's agreement to have income imputed to her in the future, especially in light of the provisions of the Family Code that recognize the goal that she become self-supporting (Fam. Code, § 4320, subd. (*l*)) and contribute to the support of her child. (*Id.*, § 4053, subds. (a) and (b).) In signing the Support Term Sheet, Schilders agreed that no income would be imputed to her through December 2015, and that effective January 2016 the amount of imputed income would be $2,000. Schilders argues that "[t]here is no evidence showing Schi[l]ders had work, training, education, or the health to work in November 2013 or March 2014 or if she would be able to in January 2016." That is irrelevant. Stupp did not have to agree that no income would be imputed to Schilders until January 2016, and Schilders did not have to agree to have income imputed to her after that. But that is what they agreed to. They also agreed that Stupp would share in child care expenses arising from Schilders working or obtaining education toward future employment.

Schilders also argues, "Agreement to impute income to the child support obligee limits the amount of child support. Without evidence for that imputation, the agreement to impute $2,000 to Schilders is an impermissible impediment to the jurisdiction of the court" over child support. This argument is baseless. None of the cases that Schilders cites provides any support for the proposition that imputing income to Schilders could in any way limit the jurisdiction of the court over child support. In fact, Family Code section 4058, subdivision (b) specifically authorizes the family court to "consider the earning capacity of a parent in lieu of the parent's income." (See *In re Marriage of*

31

*Hinman* (1997) 55 Cal.App.4th 988, 998.)  As we noted above, the family court continues to exercise its jurisdiction over child support, and may modify child support orders after judgment.  (*Bodo*, *supra*, 198 Cal.App.4th at p. 386; *Lusby*, *supra*, 64 Cal.App.4th at p. 469.)

(iii)    *The Child Support Provisions Are Not Unlawful*

On appeal Schilders claims that the Support Term Sheet is unlawful because it provides for child support "in an amount that is insufficient or lower than guideline."  Her argument rests on two bases:  she claims that the $1,500 monthly child support payment specified in the Support Term Sheet is below the guideline amount,[16] and that even if $1,500 is the guideline amount, the reduction of that payment by reimbursement results in child support that is insufficient.

As to Schilders's contention that $1,500 per month in child support is lower than guideline, despite her claims to the contrary, her citations to the record do not show that she raised this issue before the family court.  Accordingly, we will not consider it here. (See *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 [" 'Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.]' "].)[17]

---

[16] Schilders supports her assertion that "[g]uideline child support does not equal and is higher than $1,500" by citing to an exhibit attached to her opening brief.  The exhibit is an undated document that appears to be a printout of "Child Support Results" from a state web site.  The Rules of Court permit attachments to briefs that are "copies of exhibits or other materials in the appellate record or copies of relevant local, state, or federal regulations or rules, out-of-state statutes, or other similar citable materials that are not readily accessible."  (Cal. Rules of Court, rule 8.204(d).)  Nothing in the record indicates that "Exhibit 1" was ever presented to the family court, and nothing in Schilders's brief indicates that it is otherwise citable, and accordingly we disregard it.

[17] Contrary to Schilders's statement that the term sheet and judgment "do not state what the guideline amount was," the March 2014 judgment requires Stupp to "pay guideline child support . . . in accordance with the Support Term Sheet," which specifies that child support is $1,500 per month.  Schilders has a remedy in the family court if the amount of child support to which she agreed is below guideline.  Family Code section 4065, subdivision (d) provides, "If the parties to a stipulated agreement stipulate to a child support order below the amount established by the statewide uniform guideline, no

32

Schilders provides no evidence or authority to show that there is anything unlawful about her agreement to reimburse Stupp at a flat rate for certain specified expenses related to the child. In particular, she cites no evidence or authority to suggest that she agreed to "no child support," or that the agreement "ensures that she will not have fair or sufficient child support." She cites no authority to suggest that it was improper for her to agree to share costs for the child's pre-school, health care and extracurricular activities, or for the custody exchange facilitator or for child care. And, as we discuss above in connection with the true-up provision and the imputation of income, Schilders cites no authority to support the claim that anything in the Support Term Sheet agreement purports to or could limit the jurisdiction of the family court to order or modify child support.

(iv)    *Terminating Spousal Support under a Richmond Order Is Not Unlawful*

Schilders argued below, and argues here, that her agreement that spousal support terminates December 31, 2019, subject to a *Richmond* order, is unlawful because it was not entered knowingly and intelligently.[18] To support that contention, she argues that the specific conditions of the termination were not explained on the record and that she was given "conflicting explanations." As a result, her argument on this point raises issues of fact, and not just issues of law.

change of circumstances need be demonstrated to obtain a modification of the child support order to the applicable guideline level or above."

[18] A *Richmond* order, which "terminat[es] spousal support jurisdiction on a specified date *unless*, prior to the fixed termination date, the supported spouse files a motion showing good cause to modify the amount and/or duration[,] is proper even upon the dissolution of a 'lengthy' marriage." (Hogoboom, *supra*, ¶ 6:1031, p. 6-517.) We see no basis for Schilders's apparent contention that this provision constitutes a waiver of spousal support, nor for any contention that her agreement to have income imputed to her constitutes a waiver of spousal support. To the contrary, Schilders stated on the record that she had entered into a *Richmond* order and knew what that was. In her arguments before the family court, Schilders's counsel confused Schilders's agreement to a *Richmond* order with Stupp's waiver of spousal support.

In her opening brief, however, Schilders omits many "significant facts" relevant to this issue, in contravention of the Rules of Court. (Cal. Rules of Court, rule 8.204(a)(2)(C).) Schilders's failure to state the evidence fairly in her opening brief waives her argument that Judge DuBois erred in failing to vacate this aspect of the March 2014 judgment as void. (*Foreman*, *supra*, 3 Cal.3d at p. 881 [if a party contends that " 'some particular issue of fact is not sustained, they are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence.* Unless this is done the error assigned is deemed to be waived.' (Italics added.)"].)

At three different places in her opening brief, Schilders quotes the very same excerpt from the voir dire conducted by her attorney before Judge Chernick on November 20, 2013:

"Ms. Shindell [Schilders's counsel]: And even if there are—this agreement as to the terms in the Marital Settlement Agreement, the orders that are set forth in this three-page document shall stand forever more.

"Ms. Schilders: Yes.

"Ms. Shindell: Unless there's further order of the Court or agreement of the parties.

"Ms. Schilders: Understood."

Schilders claims that these questions "show that [she] was saying yes without knowing to what she was agreeing," and that her lawyer made "contradictory assertions." But she does not explain why it is contradictory or incorrect to say that an order will stand in the absence of a further order or agreement, nor does she cite any authority to that effect. And she never quotes the following crucial portion of the transcript, which precedes the snippet she quotes:

"Ms. Shindell: The Support Term Sheet sets forth an outline of the terms regarding spousal support and child support; isn't that right?

"Ms. Schilders: Yes.

"Ms. Shindell: And the support terms on here have been reviewed at length with your counsel.

34

"Ms. Schilders: Uh-huh, correct.

"Ms. Shindell: As well as your CPA, Lucy Chung.

"Ms. Schilders: Yes.

"Ms. Shindell: And you have been given the opportunity to review all issues and potential responsibilities and rights regarding the terms that are set forth in this agreement with your counsel and expert.

"Ms. Schilders: Yes.

"Ms. Shindell: You were also given a proposal, draft of the support—the support agreement on October 26th by Clifford Chernick; isn't that right?

"Ms. Schilders: That's correct.

"Ms. Shindell: And you have reviewed that as well at length with your counsel?

"Ms. Schilders: Yes.

"Ms. Shindell: And it was considered in coming to the agreement that you entered into today [i.e., the Support Term Sheet].

"Ms. Schilders: Yes.

"Ms. Shindell: As part of this agreement, you have entered into a Richmond order.

"Ms. Schilders. Yes.

"Ms. Shindell: And do you understand what a Richmond order is?

"Ms. Schilders: Yes."

Schilders ignores the extensive voir dire on the record, while claiming that the record does not show that her agreement was knowing and intelligent. And she completely ignores Judge Chernick's finding that "each party has knowingly and intelligently entered into this agreement and understands the terms and conditions of this agreement."

Even if we consider the merits of Schilders's argument, we would reject it, because the little authority Schilders cites to support her position is inapposite. The facts here are nothing like those in *In re Marriage of Brockman* (1987) 194 Cal.App.3d 1035

where the Court of Appeal remanded the case for a determination of whether a wife's consent to a settlement agreement was coerced. (*Id.* at p. 1047.) The agreement at issue there was a document that husband's attorney wrote out by hand in a hallway of the courthouse, in which wife basically gave up all claims to community property in exchange for sole physical custody of the children. (*Id.* at p. 1040.) Nor is this case like *In re Marriage of Moore* (1980) 113 Cal.App.3d 22, 26, where parties entered a settlement agreement without being represented by counsel, or *In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702, 1706-1707, where a wife's waiver of support was conditioned on mistakes of fact and law that were made by the trial court as well as the wife.

In sum, we reject Schilders's arguments that the Support Term Sheet contains unlawful terms.

c.     *Judge Chernick Did Not Err by Including the Child's Name and Birth Date in the March 2014 Judgment*

Schilders contended below, and contends on appeal, that the family court exceeded its jurisdiction or abused its discretion by entering a judgment that included the full name and birth date of her child. This argument is frivolous.

Schilders claims that by including that information, the family court violated one of its standing orders, which states, "parties must refrain from including, or must redact where inclusion is necessary, the following personal data identifiers from all pleadings and other papers filed with the court . . . unless otherwise ordered by the court: . . . Names of minor children. . . .  [¶] . . . Dates of birth." (Super. Ct. San Mateo County, Standing Order No. 07-92 (Standing Order), § 2.A.(2)-(3).)

Schilders cites no authority to support her contention that the family court exceeded its jurisdiction or abused its discretion by including her child's name and birth date in the judgment, and she cites no authority to support her claim that she is "entitled to a judgment that does not violate the Standing Order." Even if Schilders could demonstrate that the court erred by including the name and birth date of her child, she

36

cites no authority to support a contention that the March 2014 judgment is void or should be vacated as a result.

We presume that the family court followed the law (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563), and in the absence of argument supported by authority we regard Schilders's argument here as forfeited.[19] (*Allen, supra*, 234 Cal.App.4th at p. 52.)

### d. Terms that Judge Chernick Included in the Attachment to FL-180 Judgment Do Not Void the March 2014 Judgment

Schilders contended below, and contends here, that the March 2014 judgment is void because Judge Chernick entered "a judgment denominated as based on 'Agreement in court' when there was no agreement to some of its terms." She refers specifically to the Attachment that Judge Chernick circulated in March 2014, and which was signed by Judge Chernick, Stupp, and Stupp's counsel and included in the March 2014 judgment.

Schilders fails to acknowledge that several of the terms to which she objects in her appeal were later modified by the family court in response to her section 473 motion. Further, she fails to show that she is prejudiced by any of the terms that the family court did not modify, such as the provisions that the date of separation was on or around September 2010 or that "[v]enue shall be in San Mateo County unless agreed in writing by the parties."

The record shows that in response to Schilders's section 473 motion, the family court addressed all of the substantive concerns that she raised as to terms in the Attachment prepared by Judge Chernick. Thus, recognizing that the Support Term Sheet specifically reserved attorney fees from and after November 18, 2013, rather than from

---

[19] If we considered Schilders's argument, we would reject it. By its terms the Standing Order applies to parties, not the court, and explicitly states that the court may order personal information to be included in filed documents. (Standing Order, § 2.A) We question whether Schilders could show the prejudice that is required for us to reverse the trial court's action. (§ 475.) In her own filings with the family court, Schilders has used her child's name, rather than the initials required by the Standing order. (Standing Order, § 2.A.(2).) Furthermore, the information at issue has been included in the family court's files since July 2012, if not before.

November 19 and 20, 2013, as stated in the Attachment, Judge DuBois ordered the March 2014 judgment modified to reflect the parties' agreement on this point. Recognizing that the 2012 custody order, which remained in effect, was a temporary order, the family court ordered the March 2014 judgment modified to reflect the status of the custody order as temporary, and to delete any language that might suggest the parties had agreed the order was permanent. Recognizing that the November Agreements said nothing about whether Stupp was current in paying child support, the family court ordered the March 2014 judgment modified to delete any statement to that effect. Recognizing that the November Agreements said nothing about the duration of child support, the family court ordered the March 2014 judgment modified to reflect the provisions of Family Code section 3901, subdivision (a), which sets forth the duration of the duty of child support and Family Code section 7050, subdivision (a), stating that an emancipated minor is an adult for purposes of child support. And recognizing that the November Agreements said nothing about when Stupp would make support payments, and hearing from Schilders that she would prefer to receive payment on the first of the month rather than the 15th, the family court ordered the March 2014 judgment modified to require payment by the first.

These modifications are part of the family court's June 23, 2014 order, which Schilders is appealing here. Schilders does not challenge the portion of the order that modified the March 2014 judgment, except to assert that the family court had no jurisdiction to modify or vacate the judgment because she filed her notice of appeal before the formal order was filed—an assertion that conflicts with her contention that the family court should have vacated the judgment—and to assert, without citing any authority, that the family court had no jurisdiction to amend the judgment because there was no pending motion that requested modification. We have already discussed and rejected Schilders's position that her notice of appeal divested the family court of jurisdiction to file an order that had already been rendered. In stating that the court could not amend the judgment in the absence of a motion, Schilders ignores the well-settled principle that the family court has inherent authority to correct clerical errors in

38

judgments, including authority to correct a judgment to make it conform to the terms of the parties' settlement agreement. (*Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 507; *Ames v. Paley* (2001) 89 Cal.App.4th 668, 673-674.) To the extent that Schilders contends that the family court did anything more than correct clerical errors, she has not shown that the family court's modifications prejudice her in any way, and therefore we affirm the family court's order modifying the March 2014 judgment. (§ 475; *Century Surety*, *supra*, 139 Cal.App.4th at p. 963.)

## DISPOSITION

We affirm the family court orders denying Schilders's sections 663 and 473 motions, and we direct the family court to sign and enter the amended judgment that was attached as Exhibit A to the order signed by Judge DuBois on July 28, 2014. The parties shall bear their own costs on appeal.


_____
Miller, J.


We concur:


_____
Kline, P.J.


_____
Stewart, J.